Filed 1/21/15  P. v. Butterfield CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060509 |
| v. | (Super.Ct.No. RIF1310033) |
| HENRY LEWIS BUTTERFIELD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Henry Lewis Butterfield appeals from a judgment of conviction for spousal/cohabitant abuse (Pen. Code, § 273.5, subd. (a)),[1] false imprisonment (§ 236), and simple assault as a lesser included offense to assault with a deadly weapon. (§ 240.) Defendant also admitted an allegation that he had served a prior prison term within the meaning of section 667.5, subdivision (b).

Defendant was sentenced to a total term of four years in state prison—the middle term of three years for the section 273.5 conviction and one year for the prior prison term. The court also imposed a concurrent eight-month term for the false imprisonment and stayed a six-month term for the assault pursuant to section 654.

On this appeal defendant contends that the trial court erred by imposing a separate term for the false imprisonment conviction, which he argues was also prohibited by section 654. We disagree and affirm the judgment. However, we will order the correction of the abstract of judgment as explained below.

## STATEMENT OF FACTS

Defendant and his girlfriend, Sharon Loosevelt (the victim), were homeless but had a regular location for sleeping and living near the Riverside Metrolink station. Early on the evening of September 5, 2013, while returning to the campsite, Ms. Loosevelt saw defendant with another woman and became angry. She told defendant she intended to leave, and he grabbed her by the arms and legs. The victim was pulled onto a mattress and held down; at one point defendant bit her in the face and punched her repeatedly.

---

[1] All subsequent statutory references are to the Penal Code.

2

Eventually an acquaintance appeared and defendant released the victim. The victim fled to a nearby gas station where she encountered California Highway Patrol (CHP) officers.

The victim's estimate of the duration of the incident was up to four hours. She judged this by the observation that when she arrived, the sun was still up, but by the time she got away from defendant it was dark. The victim also testified that on the previous evening, defendant had "drug me across the parking lot" because "[h]e wanted me to come back home again," and that "[h]e didn't want me to leave . . . I didn't want to have to be with him no more, so he would come back after me and start running and screaming after me . . . ." She further testified that such behavior, along with physical violence exerted to prevent her from leaving him, was a regular feature of the relationship.

A Riverside police officer who had been dispatched to the gas station in response to notification from the CHP testified that he arrived about 10:30 at night. He observed the victim with blood on her face and a bruise near her eye.

The person whose arrival allowed the victim to flee agreed that it was probably at least 8:00 o'clock when he arrived and that it was dark. He confirmed that after he and defendant exchanged words, the victim jumped up and ran, telling him "[y]ou better get out of here or you'll end up looking the way I am." The witness saw that her face was "all bruised and bloody."

Defendant testified to a version in which he did not assault the victim and only grabbed her when she began throwing things around the campsite after finding him with the other female.

DISCUSSION

A.

Defendant's first argument is that he harbored only a single criminal intent when he forcibly detained the victim and then committed the physical assaults which constituted the violation of section 273.5.

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." When section 654 applies, the proper procedure is to impose the sentence on the lesser offense, but stay it.[2] (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)

---

[2] When the court imposes a concurrent sentence, that is treated as an implicit finding that the court found separate intents. (See *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564-1565.) In this case it is unnecessary to infer the court's conclusion, because the defense *agreed* that section 654 did *not* prohibit multiple terms. However, the People agree that a sentence which violates section 654 is an unauthorized sentence and the failure to object at trial does not prevent the appellate court from correcting the error. (*People v. Hester* (2000) 22 Cal.4th 290, 294-295; *People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.)

The crucial factor in determining whether section 654 prohibits multiple punishment is whether or not the defendant can be found to have harbored multiple criminal objectives; if all offenses were incidental to a single objective, multiple punishment is prohibited. (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1288.) The trial court's determination that separate intents were involved will be upheld if supported by substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

After a general discussion of the law in this respect, defendant relies on *People v. Guzman* (1996) 45 Cal.App.4th 1023 (*Guzman*). In that case, the victim observed defendant and others removing property from his (attached) garage. He pursued them, and when he confronted them, defendant and another perpetrator beat, choked, and kicked the victim before fleeing. (*Id.* at pp. 1025-1026.) Defendant was convicted of and separately sentenced for burglary, robbery, and grand theft. The appellate court held that the attack on the victim (which made the matter a robbery case through the use of force) occurred while the perpetrators were attempting to escape after the burglary and that separate punishment was inappropriate.[3] (*Id.* at p. 1028.)

*Guzman* is inapposite here. First, if the trial court believed that the victim's estimate of the time involved was anywhere near accurate, the false imprisonment extended far beyond the time needed to inflict half a dozen punches and a bite. Perhaps more conclusively, there was evidence that defendant first grabbed and detained the

---

[3] It also stayed the term imposed for grand theft, as a lesser included offense to robbery. (*Guzman*, at p. 1028.)

5

victim not *in order to* assault her, but specifically to prevent her from leaving him and the area. The victim testified that she had announced her intent to leave when he seized her. She also testified that defendant had been controlling throughout their relationship and on the very evening before had forcibly dragged her across a parking lot to force her to return with him to their campsite.

It is possible that the assault reflected the same intent as the false imprisonment—to coerce the victim into remaining with defendant through fear and violence. However, the trial court could also have reasonably found that the false imprisonment reflected the intent to prevent the victim from leaving, while the subsequent protracted assault, including biting, simply reflected an intent to injure.[4] The circumstances provide substantial evidence to support the trial court's ruling.

### B.

The trial court orally imposed a subordinate concurrent term of eight months for the false imprisonment conviction, calculated as one-third the midterm of two years. However, the abstract of judgment erroneously shows that the full middle term of two years was imposed. The People concede the error and agree that the abstract should be corrected. We will so order.

---

[4] Indeed, the trial court made an express finding that the physical assault was committed with the intent to physically hurt the victim in applying section 654 to the cohabitant abuse and assault convictions.

6

DISPOSITION

The judgment is affirmed.  The trial court is directed to issue a corrected abstract of judgment reflecting the imposition of a concurrent eight-month term for count 3, false imprisonment, and to forward a copy of the corrected abstract of judgment to the California Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST<br>
J.

We concur:


RAMIREZ<br>
      P. J.


KING<br>
      J.